## Motor Vehicle Certificates of Title (No. 2)

ELMER T. BOLLA, Deputy Attorney General, and ANNE X. ALPERN, Attorney General, August 31, 1959. —You have requested our advice on several matters arising under The Vehicle Code of April 29, 1959, P. L. 58, provisions which deal with the procedure to be followed when there is an alleged variance between the names on a motor vehicle certificate of title or an application therefor and those on a related security transaction. You ask specifically: (1) If title must be issued in the same names as appear on the security transaction; and (2) what circumstances permit a correction of a title or recordation of a lien thereon without payment of a fee.

1. The typical situation in which an alleged variance occurs is where A's name appears on the title certifi-

cate or an application therefor and a related security transaction comes to the department's attention in which A and B, usually husband and wife, are identified as purchasers of the vehicle in question. Normally, the document evidencing the security transaction is not presented to the department; however in cases where a title is returned for the noting or correction of an encumbrance, the department requires the submission of a copy of the accompanying security transaction.

Section 102 of the code, 75 PS §2, defines "owner" as follows:

"A person or persons *holding the legal title of a vehicle;* or, in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the mortgagor, conditional vendee or lessee, then such mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this act." (Italics supplied.)

Section 202 (*a*) of the code, 75 PS §32, provides, in part:

"(a) Application for a certificate of title shall be made upon a form prescribed and furnished by the department; and shall be accompanied by the fee prescribed in this act; and shall contain a full description of the motor vehicle, trailer, or semi-trailer, the actual or bona fide address *and name of the owner*, together with a statement of the applicant's title, and of any liens or encumbrances upon said motor vehicle, trailer, or semi-trailer, and whether possession is held subject to a chattel mortgage or under a lease, contract of conditional sale, or other like agreement. . . . The secretary shall use reasonable diligence in ascertaining whether or not the facts stated in said application are

true, and, *if satisfied that the applicant is the lawful owner* of such motor vehicle, trailer, or semi-trailer, *or is otherwise entitled to have the same titled in his name*, and that all taxes payable by the applicant under the laws of this Commonwealth on or in connection with, or resulting from, the acquisition or use of the motor vehicle, trailer or semi-trailer have been paid, the department shall issue a certificate of title, bearing the signature or facsimile signature of the secretary, or such officer of the department as he shall designate, and sealed with the seal of the department." (Italics supplied.)

You state that your department, relying upon the quoted provisions of the code, has taken the position that A and B, in the illustration above, are the "owners" of the vehicle and that the title should be in *both* their names. You further state that where such a title, in A's name only, is returned to the department for corrective purposes, under circumstances which would not otherwise require the payment of a fee, that the department insists upon including B's name in the title and charging a fee for such correction.

It is our opinion that this practice is unlawful and should be discontinued.

When A and B execute a conditional sale or other type of security agreement for the purchase of a motor vehicle, whether B is identified in the agreement as a "cobuyer" or simply as an obligor, title to the vehicle, *for the purpose of The Vehicle Code*, does not pass from the seller to A and B. A and B are at liberty to take title in either or both of their names, or, if they wish to make a gift of the vehicle, in the name of C. The designation on the Application For Certificate of Title (Form RVT-1) accomplishes this purpose when the seller, in accordance with the request of the parties, executes the assignment of the certificate. The designee then executes the application. If B, in the case

under consideration, wants to have her name on the title she must protect her interests, as in all other legal transactions.

This conclusion is not only the logical interpretation of the transaction but is consistent with the statutory purpose of the requirement that a certificate of title be obtained on a motor vehicle. In Official Opinion No. 28, Motor Vehicle Certificates of Title, 13 D. & C. 2d 412, we cited numerous cases to the effect that a certificate of title creates neither ownership of a vehicle nor conclusive evidence of ownership. We concluded by citing the following passage from Majors v. Majors, 349 Pa. 334, 338 (1944):

". . . We are aware the primary purpose of the act was not designed to establish the ownership or proprietorship of an automobile, but rather to register the name and address of the person having the right of possession, and to furnish persons dealing with one in possession of an automobile a means of determining whether such possession was prima facie lawful . . ."

On pages 418 and 419 of the opinion we stated:

". . . it does not logically follow that the legislature intended that all persons identified with the original transaction as conditional buyers, lessees or mortgagors should appear as coöwners in the certificate of title. If the conclusions expressed in the letter of advice are to be followed, the Secretary of Revenue would not be justified in issuing a certificate of title in the first instance, unless he examined the original security device to determine that all parties obligated therein are to be included as owners on the certificate of title . . . we cannot allow the policy to continue whereby a certificate of title will be refused where there is an additional party included in the note and security agreement as a joint and several obligor."[*]

---

[*] Obligee in original.

Therefore we are of the opinion that a certificate of title need not be issued in the same names as appear in the security agreement. In the example noted above, A would be entitled to receive the title certificate in his own name. Nor need a correction be made where an existing certificate in the name of A is returned for the notation of an encumbrance which arises from an agreement in which A and B are identified as cobuyers.

2. Section 205 of The Vehicle Code, 75 PS §35, states:

"When it is shown by proper evidence, upon investigation, and good cause appearing therefor, that any certificate of title has been issued in error to a person not entitled thereto, or contains incorrect information due to any cause, the secretary shall notify in writing the person to whom such certificate has been issued and such person shall immediately return such certificate of title within forty-eight (48) hours, together with any other information necessary for the adjustment of the department records, and upon receipt thereof, the secretary shall cancel such certificate and issue a corrected certificate of title without fee.

"Penalty.—Any person violating any of the provisions of this section shall, upon summary conviction before a magistrate, be sentenced to pay a fine of twenty-five dollars ($25.00) and costs of prosecution, and in default thereof, shall undergo imprisonment for not more than ten (10) days.

"Limitation.—The provisions of this section are subject to the limitation of actions as set forth in section 1201 of this act."

Section 206, 75 PS §36, provides for issuance of a duplicate certificate as follows:

"In the event of a lost, destroyed, defaced or illegible certificate of title, or for the purpose of recording a lien against any motor vehicle, trailer or semi-trailer, which lien arises after the original certificate of title

has been issued, an application may be made to the department for a duplicate, upon a form prescribed and furnished by the department, which shall be signed by the owner and sworn to before a notary public or other officer empowered to administer oaths, and accompanied by the fee provided in this act. Thereupon the department shall issue a duplicate certificate of title to the owner or person entitled to receive same under the provisions of this act."

Section 720 sets the fees: For an original certificate $2; for a duplicate certificate, $1, except when issued for the purpose of recording a lien in which case the fee is $2.

Section 205 has been referred to in two cases. In Automobile Banking Corporation v. Weicht, 160 Pa. Superior Ct. 422, 431 (1947), the court noted that this section provided for correction of a title issued as a result of a mistake. In Popkin v. Credit Reliance Co., 34 Berks 93, 98 (1941), the court in a dictum hinted that the section was intended to apply only where the error occurred in the department, and in its subsequent affirmance on exceptions to the decree nisi, the court states its certainty that this section was not intended to permit the Secretary of Revenue to determine conflicting claims to a title: 34 Berks 141, 142-3 (1941).

We believe that these cases accurately indicate the proper meaning of section 205. Issuance of a corrected certificate without fee should be limited to situations where the department, through its own mistake, transmits a certificate to the wrong person or makes an error in transferring or neglecting to transfer information to a certificate.

Thus, if a title application is submitted and an encumbrance is noted thereon, the title certificate should contain a record of the lien. If the department neglects to record the lien, it must correct the certificate with-

out fee. On the other hand, if the encumbrance is not made known until after the certificate is issued and then returned with a request to record the lien, section 205 does not apply, and a fee should be charged in accordance with section 720. Nothing in the code justifies any distinction based upon the number of days elapsing between the date of a security agreement and the date title is issued; accordingly, your present use of a 30-day free period must be discontinued. A mistake of the department must be corrected *at any time* without fee; a change not required or requested because of the department's error calls for payment of a fee, no matter when made.

It should be pointed out that the code makes specific reference to the department's duty when a lien arises *after* issuance of the original certificate of title. Both section 202 (*b*) and section 206 then permit recordation of the lien by application for and issuance of a *duplicate* certificate of title. A new original certificate must be issued, however, when the lien arose prior to the original issuance and was not recorded because of the mistake or neglect of someone other than the department.

For your future guidance, it might be helpful to consider a number of illustrative examples. In each of these cases it is assumed that there has been no departmental error. In all the following cases the department should collect a fee:

1. A, an individual, transfers title or an encumbrance to A and B, or vice versa.

2. A, an individual, dies, and title or encumbrance is transferred to an heir, next of kin or any other person.

3. A has title or encumbrance recorded in a fictitious name, AB Company, and transfers title or encumbrance to A, or vice versa.

4. A changes her name to AX by court order, or uses AX as an assumed name, and transfers title or encumbrance to AX.

5. A, a corporation, changes its name from A to B, and transfers title or encumbrance to B.

6. A corporation merges with B corporation, and transfers title or encumbrance to B corporation.

7. A corporation assigns its titles or encumbrances, by whatever device or for whatever reason, to B corporation.

We are of the opinion, therefore, and you are accordingly advised that: (1) A certificate of title to a motor vehicle need not be issued in the same names as appear on a related security agreement; (2) a fee must be charged for the issuance of a new or duplicate certificate of title in all cases except where such issuance is made necessary because of departmental error in connection with the issuance of the outstanding certificate; and (3) the present practice of the department to make no charge for the correction of an encumbrance on a title where the security agreement is dated within 30 days of the title date must be discontinued.